[No. B184022. Second Dist., Div. Two. Apr. 18, 2006.]

V.C., a Minor, etc., Plaintiff and Appellant, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

500

502

**Counsel**

The Cifarelli Law Firm, Thomas A. Cifarelli and Dawn M. Smith for Plaintiff and Appellant.

Gutierrez, Preciado & House, Arthur Preciado and Calvin House for Defendant and Respondent.

## OPINION

**DOI TODD, Acting P. J.**—Plaintiff and appellant V.C., a minor, by and through her guardian ad litem Maria O., appeals from an order dismissing her complaint with prejudice following the trial court's order sustaining a demurrer without leave to amend filed by defendant and respondent Los Angeles Unified School District (District). The trial court found that V.C.'s complaint was barred by her failure to present a claim or seek to present a late claim within the time limits specified by Government Code sections 911.2 and 911.4, respectively. Though we are dismayed by the result that V.C. has no immediate recourse against the District for its own and its employee's abhorrent conduct, we must affirm the judgment. V.C. neither presented a claim within six months of the accrual of her cause of action, nor sought leave to present a late claim within one year of accrual. Moreover, there is no basis for her to amend her complaint to allege that her cause of action did not accrue by reason of either delayed discovery or equitable estoppel.

## FACTUAL AND PROCEDURAL BACKGROUND

On appeal from a judgment of dismissal following a demurrer sustained without leave to amend, we assume the truth of all well-pleaded facts, as well as those that are judicially noticeable.[1] (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

According to the complaint, middle school teacher Ignacio Castro repeatedly sexually molested V.C. between 2001 and 2003, when she was ages 11 to 13. Judicially noticed documents showed that for much of that period V.C.'s mother was aware that V.C. had been ditching her classes and spending the time in Castro's classroom. She had V.C. and Castro sign a form stating that they would not have contact with each other. She also discussed the matter with an assistant school principal, telling him that "she does not want [V.C.] inside Mr. Castro's classroom" because she "suspected for a long time that something was going on between [V.C.] and Mr. Castro." The assistant principal responded that he could not do anything if V.C., herself, was not alleging any misconduct on Castro's part. Finally, in July 2003, V.C.'s mother expressed her concerns about Castro to the District in writing, indicating that he had no business being near her daughter and that she was worried about her daughter's safety. Castro was arrested on August 15, 2003, and subsequently convicted and imprisoned for his sexual abuse of V.C.

---

[1] On December 1, 2005, we granted V.C.'s request for judicial notice in its entirety.

On September 17, 2004, V.C. presented her claim for damages against the District. The District rejected it as untimely on September 28, 2004. On October 7, 2004, V.C. applied for permission to present a late claim, which the District likewise rejected as untimely.

In December 2004, V.C., by and through her guardian ad litem, filed her complaint against the District and Castro, as well as a separate action seeking relief from the claim presentation requirement. She alleged causes of action for negligence—framed as five separate causes of action for negligent hiring, retention and supervision; negligence in the failure to take reasonable protective measures; negligence in the breach of duties arising from a special relationship; negligent breach of fiduciary duty; and a negligent violation of statutory duties—as well as causes of action for negligent and intentional infliction of emotional distress, sexual assault and sexual battery. In January 2005, the trial court granted V.C.'s petition, thereby relieving her from the claim requirement and permitting her to proceed on her complaint.

The District demurred, primarily on the ground that V.C. failed to comply with the Tort Claims Act in that she neither presented a written claim within six months of the accrual of her cause of action (Gov. Code, § 911.2) nor applied for leave to file a late claim within one year of accrual (Gov. Code, § 911.4).[2] In her opposition to the demurrer, V.C. argued that Code of Civil Procedure section 340.1 (section 340.1), which permits an individual to commence a cause of action alleging childhood sexual abuse up to eight years after the individual attains the age of majority, must be construed to provide that her cause of action would accrue—at the earliest—when V.C. reached the age of majority. In view of this statute, she argued that she was not required to present a claim at this time because her cause of action had not yet accrued.

The trial court sustained the demurrer without leave to amend, ruling that V.C.'s "causes of action against the Los Angeles Unified School District are barred as a matter of law because Plaintiff failed to timely comply with the requirements of the California Tort Claims Act; and [¶] . . . [t]he timeliness of a claim against a public entity for childhood sexual abuse is

---

[2] A demurrer was also the appropriate means by which to challenge the trial court's granting V.C.'s petition seeking relief from the claim requirement. (E.g., *City of Los Angeles v. Superior Court* (1993) 14 Cal.App.4th 621, 627 [17 Cal.Rptr.2d 703] ["The correctness of rulings pursuant to [Government Code] section 946.6 may be challenged by means of a demurrer in the lawsuit filed after relief was granted from the claims requirement and on direct appeal"].)

governed by Government Code section 945.6, not Code of Civil Procedure section 340.1." The trial court ordered that the complaint be dismissed with prejudice. This appeal followed.

## DISCUSSION

V.C. contends that the trial court erred in sustaining the District's demurrer and dismissing her case, for two independent reasons. First, she contends that the limitations period for filing her complaint is governed solely by section 340.1 and that legislative history shows she is entitled to rely on that provision without regard to the claims filing requirement. She asserts that her claim was timely given the accrual date of her cause of action dictated by section 340.1. Second, she contends that the doctrines of delayed discovery and equitable estoppel mandated delaying the accrual of her cause of action and that she should have been permitted leave to amend to allege facts supporting the application of those doctrines.

On appeal, we review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We assume the truth of properly pleaded allegations in the complaint and give the complaint a reasonable interpretation, reading it as a whole and with all its parts in their context. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; *People ex rel. Lungren, supra,* at p. 300.) However, we may disregard allegations which are contrary to law or to a fact of which judicial notice may be taken. (*Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 559–560 [53 Cal.Rptr.2d 878]; *Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143 [39 Cal.Rptr.2d 752].)

We apply the abuse of discretion standard in reviewing the trial court's denial of leave to amend. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497–1498 [57 Cal.Rptr.2d 406].) When a demurrer is sustained without leave to amend, we determine whether there is a reasonable probability that the defect can be cured by amendment. (*Leibert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1701 [39 Cal.Rptr.2d 65].) The appellant bears the burden

of proving the trial court erred in sustaining the demurrer or abused its discretion in denying leave to amend. (*Blank v. Kirwan, supra,* at p. 318; *Coutin v. Lucas* (1990) 220 Cal.App.3d 1016, 1020 [270 Cal.Rptr. 93].)

Having independently reviewed the complaint and the documents which V.C. requested that we judicially notice, we conclude that the trial court properly sustained the District's demurrer without leave to amend. We find that a timely government claim is a prerequisite to V.C.'s maintaining this action against the District, notwithstanding the provisions of section 340.1. The record shows that V.C. neither presented a written claim within six months of when her cause of action accrued nor applied for leave to file a late claim within one year of accrual. Moreover, we find no abuse of discretion in denying leave to amend, as the record shows that V.C.'s complaint could not be amended to allege facts supporting either delayed discovery or equitable estoppel.

I. *The Tort Claims Act.*

█ According to Government Code section 815, subdivision (a), all governmental liability is governed by statute. (Gov. Code, § 815, subd. (a); *Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 630 [76 Cal.Rptr.2d 489, 957 P.2d 1323] ["The California Tort Claims Act provides that a public entity is not liable for injury arising from an act or omission except as provided by statute"].) As explained in *Curtis T. v. County of Los Angeles* (2004) 123 Cal.App.4th 1405, 1414 [21 Cal.Rptr.3d 208] (*Curtis T.*), "governmental entities are immune from being sued unless the Legislature has specifically provided otherwise. The [Tort Claims] Act sets forth the limited circumstances under which the state and other political subdivisions may be sued and the applicable procedural requirements."

Government Code section 900 et seq., part of the Tort Claims Act, "prescribes the manner in which public entities may be sued." (*Chalmers v. County of Los Angeles* (1985) 175 Cal.App.3d 461, 464 [221 Cal.Rptr. 19].) Government Code section 945.4 provides that " 'no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with . . . [Government Code] Section 910 . . . until a written claim therefor[e] has been presented to the public entity and has been acted upon by the [public entity's] board, or has been deemed to have been rejected by the board . . . .' " (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 445 [20 Cal.Rptr.3d 176, 99 P.3d 500] (*Stockett*).) The purposes of the claim filing requirement are: "(1) to give notice to the public entity so it will have a timely opportunity to investigate the claim and determine the facts; and (2) to give the public entity an opportunity to settle meritorious

claims thereby avoiding unnecessary lawsuits." (*San Diego Unified Port Dist. v. Superior Court* (1988) 197 Cal.App.3d 843, 847 [243 Cal.Rptr. 163]; accord, *Stockett, supra,* at p. 446.)

■ Government Code section 911.2 requires that personal injury claims against a public entity be filed "not later than six months after the accrual of the cause of action." Alternatively, a late claim may be presented within a reasonable time after accrual, not to exceed one year. (Gov. Code, § 911.4.) If the application to file a late claim is denied, a plaintiff may petition the court for an order relieving her from the claims presentation requirement. (Gov. Code, § 946.6.) No action for money damages may be brought against a public entity unless a written claim has been presented to the entity and acted upon, or relief is granted from the claims requirements. (Gov. Code, §§ 905, 945.4, 946.6.)

■ The date of accrual of a cause of action marks the starting point for calculating the claims presentation period. (Gov. Code, § 901; *Mosesian v. County of Fresno* (1972) 28 Cal.App.3d 493, 500 [104 Cal.Rptr. 655].) "The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' [Citation.] In other words, it sets the date as the time when the cause of action is complete with all of its elements [citations]—the elements being generically referred to by sets of terms such as 'wrongdoing' or 'wrongful conduct,' 'cause' or 'causation,' and 'harm' or 'injury' [citations]." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79] (*Norgart*); see also *Mosesian v. County of Fresno, supra,* at p. 500 ["A cause of action normally accrues when under the substantive law the wrongful act is done and the liability or obligation arises, that is, when action may be brought"].) "A cause of action accrues for purposes of the filing requirements of the Tort Claims Act on the same date a similar action against a nonpublic entity would be deemed to accrue for purposes of applying the relevant statute of limitations." (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 444, fn. 3 [256 Cal.Rptr. 766, 769 P.2d 948] (*John R.*); accord, *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 708 [269 Cal.Rptr. 605].)

■ As explained in *John R.,* the time of accrual is particularly significant in the context of the claims statutes. (*John R., supra,* 48 Cal.3d at p. 444.) This is because contrary to the general rule that the time during which the individual who sustained injury is a minor "is not part of the time limited for the commencement of the action" (Code Civ. Proc., § 352, subd. (a)), the time of minority is counted in determining whether a claim was timely presented following accrual of a minor's cause of action against a public entity. (Code Civ. Proc., § 352, subd. (b); Gov. Code, § 911.4, subd. (c)(1); *John R., supra,* at p. 444, fn. 3; *Curtis T., supra,* 123 Cal.App.4th at p. 1416.)

## II. *V.C.'s Failure to Comply with the Tort Claims Act Bars Her Complaint.*

The trial court sustained the District's demurrer without leave to amend on the ground that V.C.'s failure to timely comply with the requirements of the Tort Claims Act barred her action. It further determined that "[t]he timeliness of a claim against a public entity for childhood sexual abuse is governed by Government Code section 945.6, not Code of Civil Procedure section 340.1." On appeal, V.C. renews the argument rejected by the trial court that section 340.1 sets the date of accrual of her cause of action at or beyond the age of majority, thereby rendering her claim timely. We agree with the trial court.

In pertinent part, section 340.1 provides: "(a) In an action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later, for any of the following actions: [¶] (2) An action for liability against any person or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff." (Code Civ. Proc., § 340.1, subd. (a)(2).) V.C. contends that the plain language of this provision shows that her cause of action had not yet accrued, and would accrue, at the earliest, when she reached the age of majority. (See, e.g., *Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191] ["If the terms of the statute are unambiguous, . . . the plain meaning of the language governs"].)

In making this argument, V.C. confounds the principles of limitations periods and accrual dates. *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806–807 [27 Cal.Rptr.3d 661, 110 P.3d 914], clarified the distinction between and purposes of the two concepts: " 'Statute of limitations' is the collective term applied to acts or parts of acts that prescribe the periods beyond which a plaintiff may not bring a cause of action. [Citations.] There are several policies underlying such statutes. One purpose is to give defendants reasonable repose, thereby protecting parties from 'defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps.' [Citations.] A statute of limitations also stimulates plaintiffs to pursue their claims diligently. [Citations.] A countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural grounds. [Citations.] [¶] A plaintiff must bring a claim within the limitations period after accrual of the cause of action. (Code Civ. Proc., § 312 ['Civil actions, without exception,

can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued']; *Norgart, supra,* 21 Cal.4th at p. 397.) In other words, statutes of limitation do not begin to run until a cause of action accrues. (*Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479, 487 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) [¶] Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.]"

■ Keeping these principles in mind, we conclude that while section 340.1 extends the time during which an individual may commence a cause of action alleging childhood sexual abuse, it does not extend the time for accrual of that cause of action. Rather, as cases decided both before and after the enactment of section 340.1 have confirmed, "[a] civil cause of action for child molestation generally accrues at the time of the molestation." (*Doe v. Bakersfield City School Dist.* (2006) 136 Cal.App.4th 556, 567, fn. 2 [39 Cal.Rptr.3d 79]; accord, *John R., supra,* 48 Cal.3d at p. 443; *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1053 [75 Cal.Rptr.2d 777]; *Christopher P. v. Mojave Unified School Dist.* (1993) 19 Cal.App.4th 165, 169 [23 Cal.Rptr.2d 353] (*Christopher P.*).) Where the molestation is continuous, accrual is measured from the date of the last molestation. (*Ortega v. Pajaro Valley Unified School Dist., supra,* at pp. 1053–1054.) ■ Applied here, the outside date of accrual is August 15, 2003, when Castro was arrested. V.C. presented her claim for damages and applied for permission to file a late claim on September 17 and October 4, 2004, respectively—dates well beyond the six-month and one-year time limits afforded by Government Code sections 911.2 and 911.4.

We are not persuaded by V.C.'s argument that the Legislature's expansion of section 340.1 over time, coupled with the statute's current application to "*any* person or *entity* who owed a duty of care to the plaintiff," demands that we construe it to apply to the District notwithstanding the requirements of the Tort Claims Act. (See Code Civ. Proc., § 340.1, subd. (a)(2), italics added.) Rather, we agree with the reasoning in *County of Los Angeles v. Superior Court* (2005) 127 Cal.App.4th 1263 [26 Cal.Rptr.3d 445] (*N.L.*), where the court rejected a substantially similar argument that the time period set forth in section 340.1 trumped the time period in Government Code section 945.6, which requires that an action against a public entity be filed within six months after denial of a claim. (See *Curran v. Mount Diablo Council of the Boy Scouts* (1998) 17 Cal.4th 670, 686 [72 Cal.Rptr.2d 410, 952 P.2d 218] [court is properly guided by principles set forth in prior California decisions construing statute at issue].) There, one and one-half years after her claim had been denied, the plaintiff filed an action against the County of Los Angeles (County) alleging that she had been sexually assaulted while housed in a juvenile facility. (*N.L., supra,* at pp. 1266–1267.) In denying the County's summary judgment motion, the trial court adopted the position V.C. advances;

it found "that the timeliness of this action was governed by the statute of limitations set forth in section 340.1 rather than section 945.6" and observed "that section 340.1 is more specific and expressly states that its special limitations period applies to actions against an 'entity.' " (*N.L., supra*, at p. 1267.)

The Court of Appeal reversed. It briefly traced the evolution of section 340.1, acknowledging that the statute had been expanded in 1998 to permit its liberalized limitations period to apply to persons and entities other than the actual abuser. (*N.L., supra*, 127 Cal.App.4th at p. 1268.) But the court found that despite this expansion, "nothing in that statute or the legislative history of the 1998 amendment to that statute reflects an intent on the part of the Legislature to excuse victims of childhood sexual abuse from complying with the [Tort Claims] Act when the defendant is a public entity or public employee." (*N.L., supra*, at p. 1269.) The court deemed the Legislature to be aware of Code of Civil Procedure section 342, which provides—as it did when section 340.1 was amended—that "[a]n action against a public entity upon a cause of action for which a claim is required to be presented . . . must be commenced within the time provided in Section 945.6 of the Government Code." (Code Civ. Proc., § 342; see also *N.L., supra*, at p. 1269.) The court found it significant that the Legislature failed to provide an express exemption from the Government Code provision in amending section 340.1: "If the Legislature had intended to relieve victims of childhood sexual abuse of the need to comply with the Act when suing a public entity, as opposed to a private entity, it would have said so. Its failure to do so evinces its intent that victims of childhood sexual abuse comply with the Act as a precursor to suing a public entity or public employee." (*N.L., supra*, at p. 1269.)

By analogy, we must presume that the Legislature was aware of both Government Code claims provisions and judicial decisions concerning the accrual date for civil actions involving the sexual abuse of a minor at the time it amended section 340.1 to apply to any entity owing a duty of care. (E.g., *Viola v. Department of Managed Health Care* (2005) 133 Cal.App.4th 299, 311 [34 Cal.Rptr.3d 626] [" 'It is a fundamental rule of statutory construction that "[t]he Legislature . . . is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof" ' "].) Accordingly, if the Legislature had intended for section 340.1 either to override the claims requirement or to alter the accrual date for actions by minors alleging sexual abuse, it would have said so. (See *Castro v. Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927, 933 [55 Cal.Rptr.2d 193] [court declined to construe "noncontroversial" amendments to Code of Civil Procedure section 473 to create a means by which a plaintiff may escape the Government Code limitations period, as the Legislature

would have expressed such a radical change in legal procedure in unambiguous language].) Indeed, the Legislature has previously employed unambiguous language to evidence its intent to carve out an exception to the claims requirements. (See Gov. Code, § 911.4, subd. (c)(2) & (3) [in computing one-year period for the time within which to file an application to present a late claim, time is not counted during which the person is detained or adjudged to be a dependent child of the juvenile court].)

V.C. also points to language in section 340.1, subdivision (c) that the statute applies "[n]otwithstanding any other provision of law" as a clear indication of legislative intent to avoid the claims requirement. Section 340.1, subdivision (c), however, has limited application to the revival of certain actions that were barred by the applicable statutes of limitations before the 2002 amendments to section 340.1 became effective. It provides in full: "Notwithstanding any other provision of law, any claim for damages described in paragraph (2) or (3) of subdivision (a) that is permitted to be filed pursuant to paragraph (2) of subdivision (b) that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived, and, in that case, a cause of action may be commenced within one year of January 1, 2003. Nothing in this subdivision shall be construed to alter the applicable statute of limitations period of an action that is not time barred as of January 1, 2003." (Code Civ. Proc., § 340.1, subd. (c).) Because V.C.'s claim could not have been barred as of January 1, 2003, since it did not accrue until the last molestation in August 2003, section 340.1, subdivision (c) has no application to this action.

Finally, V.C. contends that the express reference to "a school district" in the legislative history of the 2002 amendments to section 340.1 unequivocally shows that the District should be subject to an action alleging sexual abuse, regardless of the provisions of the Tort Claims Act. Again, we disagree. At the time of the 2002 amendments, section 340.1 required that an action for childhood sexual abuse brought against the abuser be commenced within eight years of the date the plaintiff attained the age of majority or within three years of the date the plaintiff discovered or reasonably should have discovered that the psychological injury or illness occurring after the age of majority was caused by sexual abuse, whichever occurred later. (Stats. 2002, ch. 149, § 1.) It further provided that actions against third parties who were not the actual abuser could not be commenced after the plaintiff reached age 26. (*Ibid.*; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001–2002 Reg. Sess.) as amended May 2, 2002, p. 3.)

Senate Bill No. 1779 created an exception to the restriction on third party actions and provided that a plaintiff may commence such an action beyond age 26, within three years of discovery of the injury or illness caused by the

abuse, "when the third party knew or had reason to know of complaints against an employee or agent for unlawful sexual conduct and failed to take reasonable steps to avoid similar unlawful conduct by that employee or agent in the future." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001–2002 Reg. Sess.) as amended May 2, 2002, p. 1.) The bill also revived causes of action solely for those claims for a period of one year, under certain circumstances. (*Ibid.*) In discussing why the limitations period should be extended for actions against persons and entities who knew of prior claims of abuse but failed to take steps to prevent future abuse, the Senate Judiciary Report stated: "General theories of negligence impose a duty of care where a third person or entity has assumed some responsibility, through a relationship or otherwise, for a person's conduct or a person's safety. An employer thus bears a duty of care to third parties for the conduct of an employee engaging in acts related to his employment, but not for acts unrelated to that employment. Similarly, a school district, church, or other organization engaging in the care and custody of a child owes a duty of care to that child to reasonably ensure its safety." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001–2002 Reg. Sess.) as amended May 2, 2002, p. 5.)

V.C. contends that this discussion demonstrates that the Legislature intended for school districts to be subject to an elongated limitations periods for actions alleging sexual abuse and argues that imposing a six-month claim requirement would unreasonably thwart the Legislature's expressed goal.[3] (See, e.g., *Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326] [committee reports are a valid source for determining legislative intent].) But in extending the time for commencement of certain actions against third parties beyond the time when the plaintiff reached age 26, the Legislature admittedly addressed only those actions that were subject to delayed discovery by the plaintiff. As explained in the Senate Judiciary Committee Report: "This bill would provide that the absolute age of 26 limitation for actions against a third party (Section 340.1(b)) does not apply, and the broader 'within three years of discovery' statute of limitations in subdivision (a) applies, in claims against third parties . . . ." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001–2002 Reg. Sess.) as amended May 2, 2002, p. 3.) The effect of delayed discovery, however, is to delay accrual of the cause of action. (*Curtis T., supra*, 123 Cal.App.4th at p. 1416; see also pt. III.A., *post.*) Thus, where a cause of action for sexual abuse has not yet accrued because of delayed discovery, the date of accrual and, in turn, the time for both presenting a

---

[3] She also argues that imposing different procedural requirements for public and private schools violates equal protection—an argument that California courts have long and consistently rejected. (E.g., *Tammen v. County of San Diego* (1967) 66 Cal.2d 468, 481 [58 Cal.Rptr. 249, 426 P.2d 753]; *Stanley v. City and County of San Francisco* (1975) 48 Cal.App.3d 575, 580–581 [121 Cal.Rptr. 842].)

claim and commencing the cause of action is extended. (See *Curtis T., supra,* pp. 1422, 1423 [reversing a demurrer sustained without leave to amend to permit minor plaintiff to allege facts sufficient "to invoke the equitable delayed discovery rule of accrual, under which plaintiff's claim would be deemed timely for pleading purposes"].) For this reason, the Legislature's discussion of school districts—or public entities—in the context of Senate Bill 1779 is entirely consistent with Government Code provisions requiring that a plaintiff present a timely claim to the public entity before being permitted to maintain a civil action.[4]

■ In sum, we find nothing in the language or legislative history of section 340.1 that establishes the Legislature intended to modify either the date of accrual or the claim requirements of Government Code sections 911.2 and 911.4 when there is an allegation of sexual abuse against a public entity. The record establishes that V.C. did not present a timely claim, nor did she seek leave to file a late claim within the prescribed time limit. "The failure to timely comply with the Government Code requirements concerning claims bars a subsequent suit. [Citations.]" (*City of Los Angeles v. Superior Court, supra,* 14 Cal.App.4th at pp. 627–628.)

### III. *The Trial Court Properly Exercised Its Discretion in Denying Leave to Amend.*

V.C. further contends that, at a minimum, she should be permitted leave to amend to allege that her cause of action did not accrue in August 2003 as a result of either delayed discovery or equitable estoppel. " '[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown. [Citations.]' [Citation.]" (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486 [86 Cal.Rptr.2d 547].) In order to show an abuse of discretion, the " '[p]laintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citation.]' " (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) Where, as here, the record fails to indicate any ability on the part of the plaintiff to plead and prove facts that would establish the elements necessary to support the amendment, no abuse of discretion can be established. (*Id.* at pp. 350–351.)

---

[4] Notably, in a bill analysis addressing earlier amendments extending both the age 26 and delayed discovery limitations periods in section 340.1 to certain third party actions, the Legislature discussed only nonpublic entities—"employers, supervisors, religious institutions . . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1651 (1997–1998 Reg. Sess.) as amended Aug. 19, 1998, p. 3.)

## A. *Delayed Discovery.*

Generally, a cause of action accrues " 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' " (*Norgart, supra,* 21 Cal.4th at p. 397.) The "delayed discovery" doctrine modifies that rule and protects a plaintiff by postponing accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (*Ibid.*) For purposes of that doctrine, "the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least 'suspects . . . that someone has done something wrong' to him [citation], 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding' [citation]." (*Id.* at pp. 397–398, fn. omitted.)

Courts may equitably apply the delayed discovery doctrine to a cause of action for sexual abuse brought by a minor. (*Curtis T., supra,* 123 Cal.App.4th at p. 1418.) In *Curtis T.,* the complaint alleged that the minor had been molested while in foster care several years earlier and further established that he presented a claim to the county within six months of his mother's discovery of the abuse. (*Id.* at p. 1409.) In reversing a demurrer sustained without leave to amend, the court "h[e]ld that plaintiff must be given leave to amend to allege, if he is able to do so truthfully—given his youth, ignorance, and inexperience, as well as his foster parent's alleged complicity in the abuse—that he lacked a real awareness, until his mother's discovery of the alleged molestation, that what happened to him between the ages of five and eight was wrong. Such truthful allegations would be sufficient, in our view, to invoke the equitable delayed discovery rule of accrual, under which plaintiff's claim would be deemed timely for pleading purposes." (*Id.* at pp. 1422–1423.) The *Curtis T.* court made clear, however, that the minor's mother's knowledge of the abuse—regardless of the minor's knowledge of his cause of action—demarcated the outside time limit at which the cause of action accrued. (*Id.* at p. 1411.)

Here, the record belies V.C.'s ability to plead facts supporting delayed discovery. Though a psychological assessment showed it was ambiguous whether V.C., herself, truly appreciated the wrongfulness of what had been done to her, other documents unequivocally established that V.C.'s mother was suspicious of wrongdoing more than six months before the claim was presented against the District. For the two years preceding August 2003, V.C.'s mother knew that V.C. was ditching her classes and spending the time in Castro's classroom. She told an assistant school principal that she did not want V.C. and Castro to have contact with each other, because she "suspected for a long time that something was going on between [V.C.] and

Mr. Castro." In July 2003, V.C.'s mother wrote to the District that she was concerned about V.C.'s relationship with Castro, noting that there were kids who said Castro was V.C.'s "boyfriend" and that this made her "real mad because he is an adult and has no business near my daughter." She also wrote that she was concerned about V.C.'s safety and suggested that she might get a restraining order against Castro. On August 15, 2003, Castro's arresting officers met with V.C.'s mother, and she described the preceding day's events that ultimately led to Castro's arrest, which involved another teacher finding Castro and V.C. alone in Castro's classroom with the lights off.

██ "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citations.] . . . In so using the term 'elements,' we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at p. 807.) Here, the record demonstrates that V.C.'s mother suspected the type of wrongdoing that injured V.C. by August 15, 2003, at the latest. " 'It is plaintiff's burden to establish "facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." ' " (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 833 [195 Cal.Rptr. 421].) Because V.C. did not and could not satisfy this burden, the trial court properly exercised its discretion in denying her leave to amend to allege delayed discovery. (See *Christ v. Lipsitz* (1979) 99 Cal.App.3d 894, 898 [160 Cal.Rptr. 498] ["Since neither the complaint nor the Christs' brief allege any facts which would justify the delayed discovery, we can find no abuse of discretion in dismissing the negligence counts without leave to amend [citation]"].)

### B. *Equitable Estoppel.*

██ "A public entity may be estopped from asserting noncompliance with the claims statutes where its agents or employees have deterred the filing of a timely claim by some 'affirmative act.' [Citation.]" (*Christopher P., supra,* 19 Cal.App.4th at p. 170; accord, *John R., supra,* 48 Cal.3d at p. 445.) Estoppel may be established by acts of intimidation or violence that are intended to prevent the filing of a claim. (*John R., supra,* at p. 445.) In *John R.,* for example, the court found that the doctrine of equitable estoppel could be applied when a student failed to tell his parents about a teacher's sexual abuse because the teacher threatened to retaliate if he disclosed the incidents. (*Id.* at pp. 445–446; see also *Doe v. Bakersfield City School Dist., supra,* 136

Cal.App.4th at pp. 571–573 [undisputed evidence of teacher's threats and the plaintiff's fear, even into adulthood, supported application of the equitable estoppel doctrine]; *Ortega v. Pajaro Valley Unified School Dist., supra*, 64 Cal.App.4th at p. 1050 [teacher's continuous verbal threats and intimidating conduct, including driving by student's new school and filing a defamation action against her for reporting abuse to school officials, supported application of the equitable estoppel doctrine]; *Christopher P., supra*, at p. 173 ["A directive by an authority figure to a child not to tell anyone of the molestation is a sufficient inducement of delay to invoke an estoppel"].)[5]

On appeal, V.C. contends for the first time that she should have been given leave to amend to allege facts supporting application of equitable estoppel. Though we could decline to address her argument because she did not raise it in the trial court (e.g., *El Morro Community Assn. v. California Dept. of Parks & Recreation* (2004) 122 Cal.App.4th 1341, 1351 [19 Cal.Rptr.3d 445]), we briefly address her contention on the merits.

V.C. points to evidence that Castro told her "if you tell anyone 'You're going to have to pray to God that you never met me,' " as well as evidence that V.C. continued to suffer stress as late as May 2004 as a result of seeing Castro in public. But she ignores all other evidence in the record. Most notably, V.C.'s disclosure of Castro's threats occurred in the context of an August 14, 2003 interview with police officers, where V.C. described in great detail how Castro had abused her over the preceding two years. Given that Castro's threats did not serve as a deterrent to her reporting the abuse to the police, we cannot conclude that his threats served as a deterrent to her presenting a claim. In assessing the propriety of applying equitable estoppel, the court must assess not only whether the threats occurred, but also "when the effect of any such threats ceased [and] whether plaintiffs acted within a reasonable time after the coercive effect of the threats had ended." (*John R., supra*, 48 Cal.3d at p. 446.) Here, the effects of Castro's threats ceased when V.C. reported the abuse on August 14, 2003, and certainly no later than the following day when Castro was arrested. Given's V.C.'s immediate reporting of the abusive events, together with her mother's knowledge of the abuse both in and before August 2003, we cannot find that a "reasonable" time for V.C. to present her claim is anything other than statutory six-month and one-year time limits specified in Government Code sections 911.2 and 911.4.

---

[5] We note that the application of the equitable estoppel doctrine in *Doe v. Bakersfield City School Dist., supra*, 136 Cal.App.4th 556, further undermines V.C.'s contention that section 340.1 operates to delay accrual of a cause of action for childhood sexual abuse until the plaintiff reaches age 26. Indeed, if the statute operated as V.C. contends, there would have been no need for the court to reach the issue of equitable estoppel, since the 22-year-old plaintiff's cause of action would not yet have accrued.

▉ The plaintiff has the burden of establishing how a complaint may be amended to cure its defects. (E.g., *Chavez v. Whirlpool Corp.* (2001) 93 Cal.App.4th 363, 369 [113 Cal.Rptr.2d 175].) V.C. has not met her burden, as she has failed to demonstrate how she could amend her complaint to allege facts supporting the application of equitable estoppel.

## DISPOSITION

The judgment is affirmed. Parties to bear their own costs on appeal.

Ashmann-Gerst, J., and Chavez, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 30, 2006, S143842.