Filed 2/29/16  Uzun v. Rutherford CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GUVEN UZUN, | B263797 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC546690) |
| v. | |
| JEFFREY RUTHERFORD et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mel Red Recana, Judge.  Affirmed.

Marc J. Gedeon and Halil Hasic for Plaintiff and Appellant.

Scheper Kim & Harris, Richard E. Drooyan, and Margaret Dayton for Defendants and Respondents.

Appellant Guven Uzun appeals from the judgment entered on the trial court's order sustaining respondents Jeffrey Rutherford and his law firm Crowell & Moring LLP's (collectively respondents) demurrer and granting respondents' motion for summary adjudication on the ground that the claims were time-barred. Appellant asserts that this court should deem his complaint timely filed because he did not discover respondents' alleged wrongdoing until he hired new counsel and because he delayed filing the complaint, fearing arrest if he sued respondents. As we shall explain, the appellant's claims lack merit. The trial court properly entered judgment for respondents, and accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant is a neurologist who owns and operates medical clinics in Beverly Hills and Playa Del Rey. In February 2009, appellant hired respondents to represent him in connection with the United States Department of Justice (DOJ) pre-indictment criminal investigation of appellant's medical clinics for alleged fraudulent billing practices. Appellant alleged that respondents agreed to obtain a prompt dismissal of the investigation. Specifically, he claimed that respondents agreed to interview key witnesses and patients; to discredit accusations of two former disgruntled employees; and to retrieve his patient files, computers, passport, and his wife's passport seized in the investigation. Respondents also allegedly agreed to communicate and coordinate with legal counsel representing appellant in the California Medical Board's separate investigation of his clinics.

Because of the "lack of progress" in the investigation, "high fees, and, more significantly, an adverse outcome of the [Medical] Board Investigation," appellant fired respondents in March 2011. Appellant immediately hired Terree Bowers of Arent Fox to represent him in connection with the DOJ investigation. Beginning in September 2011, appellant sent respondent Rutherford several e-mails complaining about respondents'

2

inadequate legal representation, conflicts of interest[1] and the damages he had suffered as a result of their representation. For example, in September of 2011, appellant complained respondent Rutherford did not pursue and protect appellant's interests by failing to obtain the quick return of appellant's files and passports and that he has suffered the "'total destruction of my career and my family.'" In November and December 2011, appellant complained that respondents had not "achieved anything" in the case other than to conduct meetings with appellant. Appellant expressed his belief that he was back "in [the] same place where I started"; that respondents had "defraud[ed]" him since November 2009; and that respondents either lacked sufficient "knowledge" to represent him successfully or that they were only motivated to generate fees.

In January 2012, Bowers informed appellant that he had discovered that respondent Rutherford's wife was a supervisor in the United States Attorney's Office (USAO) and that she was acting chief of the USAO's Criminal Division, which was considering prosecuting appellant. After that, appellant wrote several emails to Rutherford complaining that respondents had failed to disclose Rutherford's wife's employment at the USAO. Appellant further complained that Rutherford had "abused" appellant's privileged information and that appellant was unable to defend himself. Appellant warned that the lawsuit against Rutherford and his firm "will be unavoidable."

In April 2012, appellant hired Thomas O'Brien of Paul Hastings LLP to represent him in connection with the federal criminal investigation. Approximately nine months later, on February 14, 2013, the USAO advised Mr. O'Brien's office that it was no longer conducting a grand jury investigation of appellant. The Federal Bureau of Investigation (FBI) also informed appellant's counsel that it had turned over the investigation files to the Los Angeles County District Attorney's Office which was considering prosecuting appellant. In September 2013, appellant's counsel learned that the Los Angeles County District Attorney's Office did not intend to file charges against appellant.

---

[1]     Appellant complained that he had learned respondents represented Aetna Inc., which allegedly had stopped paying appellant's insurance claims during the investigation of appellant's practice.

On June 2, 2014, appellant filed a complaint against respondents alleging causes of action for legal malpractice, breach of fiduciary duty, and fraud, and in September 2014, appellant filed a first amended complaint. Appellant's malpractice cause of action alleged that respondents failed to achieve the agreed upon objectives of the representation—that they failed to conduct witness interviews and discredit the two key former employees; respondents had not obtained the return of his files, computers, and passports; and that they failed to timely bring the federal investigation to a conclusion. Appellant based the breach of fiduciary duty cause of action on allegations that respondents failed to disclose that (1) Mr. Rutherford's wife was a supervisor in the USAO, and (2) respondents represented Aetna, Inc.[2] Appellant alleged that respondents' failures to disclose these conflicts and obtain his written consent breached their fiduciary duties to him, causing financial harm. In appellant's fraud claim, he alleged that from February 2009 until March 2011, respondents repeatedly misrepresented that they were moving the federal criminal investigation forward and "closer to a conclusion."

In October 2014, respondents filed a demurrer to the first amended complaint, arguing that appellant's claims were time-barred. Respondents asserted that as early as March 2011 when he fired them, appellant discovered that respondents had allegedly provided deficient legal representation, that appellant had failed to allege damage from the conflict of interest/fiduciary duty claim, and that the purported misrepresentations were non-actionable opinions. Thereafter December 2014, respondents also filed a motion for summary adjudication on appellant's legal malpractice and breach of fiduciary duty claims, arguing appellant's claims were untimely filed. Respondents supported the motion with copies of emails appellant sent to Rutherford between September 2011 and April 2012.

Appellant filed oppositions to the motions, arguing that although he knew he had been harmed in 2011 and suspected that respondents' legal representation had been inadequate, he could not confirm that suspicion until September 2013, when he became

---

[2] On appeal, Uzun has abandoned his claim for breach of fiduciary duty based on the alleged non-disclosure of respondents' relationship with Aetna.

4

aware of the actions of O'Brien and his firm to bring about the conclusion of the investigation, which actions the respondent should have but had neglected to perform. In his opposition to the motion for summary adjudication, appellant also conceded that he had learned in January 2012 that Rutherford's wife worked for the USAO. He claimed, however, that he did not pursue his lawsuit against respondents at that time because he feared retaliation from the USAO. Appellant claims that in June 2012, O'Brien informed him that the USAO had threatened to arrest appellant if he continued to send emails to respondent Rutherford.

The court heard the demurrer and motion for summary adjudication together. The court sustained the demurrer as to the legal malpractice and fraud claims without leave to amend, concluding that appellant had discovered the omissions of his counsel when he fired them in March 2011, and that his complaint filed in June 2014 was untimely under the one-year statute of limitations governing malpractice claims, and the three-year statute of limitations for fraud claims. The court also granted summary adjudication on the legal malpractice[3] and breach of fiduciary duty claims because the statutes of limitations barred the claims. The court dismissed the action with prejudice. Appellant timely appealed.

---

[3]    The court ruled that appellant had failed to raise a triable issue of fact with respect to the malpractice claim, and that the claim was moot in view of the court's ruling on the demurrer.

5

**DISCUSSION**

I.    *The Trial Court Properly Granted the Motion for Summary Adjudication On Appellant's Malpractice and Breach of Fiduciary Duty Causes of Action.*

Code of Civil Procedure section 340.6[4] provides the limitations period for malpractice and breach of fiduciary duty:[5] "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."[6] (§ 340.6, subd. (a).) Although the resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts are susceptible of only one legitimate inference, summary judgment is proper. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.)

---

[4]    All subsequent statutory references are to the Code of Civil Procedure.

[5]    Section 340.6 governs appellant's breach of fiduciary duty cause of action. (See *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 819 [section 340.6 applies to claims for breach of fiduciary duty arising out of the performance of an attorney's professional duties].)

[6]    Section 340.6, subdivision (a) also specifies situations in which the statute of limitation is tolled: "[I]n no event shall the time for commencement of a legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury. [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred. [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation." (§ 340.6, subd. (a).) Here, the application of section 340.6 centers on the question of when appellant discovered the cause of action, rather than the statutory tolling provisions.

A. *Malpractice Claim*

Appellant acknowledges that in March 2011 when he fired respondents he knew he had suffered harm and was also aware that respondents had not completed the objectives of the representation. Nonetheless, appellant maintains that his discovery of his malpractice claim was delayed until September 2013 when O'Brien informed him of the various tasks his firm performed in the investigation, including interviewing witnesses, and patients, reviewing billing records and discrediting the two former employees who had accused him of misconduct. Appellant asserts that his lawsuit was timely because he filed his action within one year of his discovery of respondents' omissions.

We are not convinced. The commencement of the statute of limitations is postponed under the delayed discovery rule only "until the plaintiff discovers, or has reason to discover, the cause of action" meaning "he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least 'suspects . . . that someone has done something wrong' to him." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397-398.) "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [plaintiff] must decide whether to file suit or sit on [his] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [he] cannot wait for the facts to find [him]." (*Jolly v. Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1111.) The uncontroverted evidence in the record demonstrates that appellant suspected respondents had done something wrong no later than March 2011. Appellant's statements in his email correspondence with respondent Rutherford in 2011 and 2012 confirm appellant had discovered or, at least, had reason to discover respondents' failings in representing him. In his opposition to the motion for summary adjudication, appellant even concedes that when he fired respondents in 2011, he had a "suspicion that [respondents'] representation was inadequate."

7

Based on the uncontroverted evidence presented in connection with the summary adjudication motion, appellant knew or should have known all the facts alleged in the complaint concerning respondents' wrongful conduct more than a year before he filed the complaint. The "facts" appellant discovered concerning the tasks O'Brien performed, are ancillary to the allegations of misconduct in the complaint; they are merely evidence to support the theory that respondents' representation fell below the standard of care. Where, as here, a cause of action for malpractice alleges a single injury, the fact that the attorney's course of conduct involves discrete negligent acts or omissions, does not create a separate statute of limitations for each act or omission. (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1526, fn. 2.)

Equally unconvincing is appellant's argument asserted for the first time on appeal that discovery was delayed because he did not know the *source* of his injury until September 2013. He asserts that he did not know whether respondents or USAO investigators prevented the resolution of the investigation until approximately nine months before he filed the lawsuit. This contention is belied by appellant's statements accusing respondents of wrongdoing in 2011 and 2012, as well as his position in both his complaint and his opposition to the motion for summary adjudication, in which he acknowledged that when he fired respondents in 2011 he placed the blame squarely on respondents for failing to move the investigation forward. Given the foregoing, the trial court properly granted summary adjudication on appellant's malpractice claim.[7]

B.      *Breach of Fiduciary Duty Claim*

Appellant's breach of fiduciary duty cause of action centers on the claim that a conflict of interest existed between appellant and respondents because respondent Rutherford's wife worked as a supervisor in the USAO. He complains that respondents failed to disclose the relationship while they represented him and asserts that he would

---

[7]      Given our conclusion that respondent was entitled to summary adjudication of this claim, we do not assess the propriety of the court's ruling on the demurrer as to this claim.

8

never have waived the conflict if he had known of the relationship. He concedes that he discovered the conflict in January 2012, more than two years before he filed this lawsuit. In his opposition to the motion for summary adjudication, however, appellant argues he refrained from suing respondents after he learned of the conflict because he feared retaliation from the USAO. Given these circumstances, appellant argues that based on the principle of "equitable tolling," the one-year statute of limitations was suspended until after the federal investigation ended. In the alternative, he maintains that the USAO's threat of arrest caused his delay in filing the claim, and thus respondent should be equitably estopped from raising the statute of limitations as a defense.

### 1. *Equitable Tolling*

In the context of legal malpractice and breach of fiduciary duty claims, non-statutory "equitable" tolling does not exist. Section 340.6, subdivision (a) states that in no event shall the prescriptive period be tolled except under the circumstances specified in the statute. "[T]he legislature expressly intended to disallow tolling under any circumstances not enumerated in the statute." (*Laird v. Blacker* (1992) 2 Cal.4th 606, 618; *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 110-111 [grounds for tolling are limited to those in the statute].) Consequently, appellant has no legal support for his argument the statute should have been tolled until the federal investigation ended.

### 2. *Equitable Estoppel*

Appellant's reliance on equitable estoppel is problematic in several respects. Preliminarily, appellant failed to raise the theory in the trial court and thus, we need not consider it on appeal. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592.)

In any event, appellant's equitable estoppel argument fails on the merits. First, appellant's claim that he delayed filing his lawsuit because of the USAO's threat to arrest him involves multiple layers of hearsay, and he has failed to articulate a legal basis to admit the evidence. Second, although estoppel may be established by acts of intimidation that are intended to prevent the filing of a claim, appellant has not shown that *respondents* are the source of the threat. A plaintiff seeking to assert equitable estoppel to excuse the untimely filing of a claim must demonstrate that the party to be estopped

9

induced the plaintiff's failure to timely assert the claim. (See *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383-384 [a party will be estopped from asserting the statute of limitations as a defense where his conduct has induced another into forbearing suit within the applicable limitations period].)

Third, even assuming the threat originated with respondents, as a matter of law, appellant waited too long after the threat ended to file his claim. In considering whether to apply equitable estoppel, "the court must assess not only whether the threats occurred, but also 'when the effect of any such threats ceased [and] whether plaintiffs acted within a reasonable time after the coercive effect of the threats had ended.'" (*V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499, 517, quoting *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 446.) Here the USAO ended its active investigation of the appellant in February 2013, and appellant presented no evidence that the USAO ever reopened the investigation. Also, although the Los Angeles District Attorney and the FBI may have continued to investigate appellant until September 2013, there is no evidence that those entities ever threatened appellant with arrest or that respondents had any connection or influence on those separate investigations. Consequently, appellant's delay in filing his claim for almost another year and a half after the threat ended is unreasonable. (See *V.C. v. Los Angeles Unified School Dist.*, *supra*, 139 Cal.App.4th at p. 517 [holding as a matter of law that a "reasonable" delay in filing a cause of action after a threat ended is no longer than the period provided by the applicable statute of limitations].) Accordingly, the trial court properly granted summary adjudication of appellant's breach of fiduciary duty cause of action.

II.     *The Trial Court Properly Sustained The Demurrer To Appellant's Fraud Claim.*

Courts have applied the three-year statute of limitations in section 338, subdivision (d) to actions for fraud against attorneys. This section also codifies the delayed discovery rule, providing that a cause of action for fraud "'is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'" (§ 338, subd. (d).)

10

Appellant's complaint alleged that respondents misrepresented that they were "moving the [f]ederal [i]nvestigation forward and closer to a conclusion," and that they concealed the fact that they had done "little or nothing to advance" the investigation while continuing to seek legal fees from him.

The court properly concluded that appellant's claim was time barred because the allegations themselves disclose that appellant was aware when he fired respondents that they had not moved the investigation forward and that they had done little or nothing to advance the cause. Appellant specifically alleged that in March 2011 because of the "lack of progress" in the investigation, "high fees, and, more significantly, an adverse outcome of the [Medical] Board Investigation" appellant fired respondents. He, therefore, had actual knowledge or, at least, had reason to discover that respondents' alleged statements were false, and this knowledge was sufficient to trigger the statute of limitations. In addition, nothing appellant later learned from his new lawyer concerning tasks respondents failed to undertake concerned the fraud claim. Because appellant was aware that respondents had not performed *any* tasks to advance the investigation when he fired them, his fraud cause of action accrued at that time. As a result, appellant's complaint filed in June 2014, more than three years after the discovery of the claim was untimely, and the court properly sustained the demurrer to appellant's fraud cause of action.[8] Finally, because appellant has neither suggested nor does it appear that an amendment would cure the claim, the trial court did not err in refusing to give appellant an opportunity to amend.

---

[8] Given our conclusion we do not decide the merits of respondents' additional argument that their statements to appellant were non-actionable opinions.

11

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.

LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

12