[No. B209843. Second Dist., Div. Three. Apr. 7, 2009.]

K.J., Plaintiff and Appellant, v.
ARCADIA UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

## Counsel

Law Office of Sohaila Sagheb, Sohaila Sagheb; and George Rosenberg for Plaintiff and Appellant.

McCune & Harber, Dana John McCune and Joseph W. Cheung for Defendant and Respondent.

## Opinion

**KLEIN, P. J.**—Plaintiff and appellant K.J. (K.J.) appeals a judgment of dismissal following the sustaining without leave of a demurrer interposed by defendant and respondent Arcadia Unified School District (the District) to K.J.'s first amended complaint.

The government claims statutes (Gov. Code, § 900 et seq.)[1] require that before suing a public entity, a plaintiff must present a claim to the public entity no later than six months after the cause of action accrues. (§ 911.2.) The essential issue presented is whether K.J. properly pled she filed a timely claim with the District prior to filing suit.

 When a plaintiff sues a public entity following the denial of a tort claim for childhood sexual abuse, the statute of limitations is the standard six-month period set forth in section 945.6, not the extended statute of limitations found in Code of Civil Procedure section 340.1. However, the issue in this case is not the statute of limitations, but rather the date the cause of action *accrued*. The accrual date for presenting a government tort claim is identical to the accrual date that would apply in an ordinary action when no public entity is involved. (§ 901; *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208–209 [64 Cal.Rptr.3d 210, 164 P.3d 630] (*Shirk*).)

 Under the delayed discovery doctrine, accrual of a cause of action is postponed until the plaintiff discovers, or has reason to discover, the cause of action. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79] (*Norgart*); *Curtis T. v. County of Los Angeles* (2004) 123 Cal.App.4th 1405, 1418 [21 Cal.Rptr.3d 208] (*Curtis T.*); *V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499, 515 [43 Cal.Rptr.3d 103] (*V.C.*).)

---

[1] All statutory references are to the Government Code, unless otherwise indicated.

 Here, K.J. alleged the perpetrator exploited her age of minority, vulnerability, and confidence to seduce her into an unlawful and harmful sexual relationship, she believed she was in love with him and that he had done nothing wrong, and she lacked a real awareness that she had been victimized until July 2007, when she gained that insight through psychotherapy. These allegations are sufficient to invoke the delayed discovery rule of accrual. Therefore, for pleading purposes, K.J. adequately alleged she presented a timely claim to the District in September 2007, two months after she realized in July 2007 that she had been the victim of a molestation.[2]

Accordingly, the judgment is reversed and the matter is remanded to the trial court with directions to reinstate the first amended complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

After commencing this action on January 16, 2008, K.J. filed the operative first amended complaint on May 12, 2008. The named defendants are Phillip Sutliff (Sutliff), who was the alleged perpetrator, as well as the District.[3]

### 1. *K.J.'s allegations.*

K.J. pled a single cause of action against the District for its negligent supervision of Sutliff. (§ 815.2.)[4] K.J. alleged in relevant part:

---

[2] During the pendency of this appeal, the Legislature amended section 905 by adding subdivision (m). Section 905, as amended, states in pertinent part: "There shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) all claims for money or damages against local public entities *except*: [¶] . . . [¶] (m) *Claims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual abuse. This subdivision shall apply only to claims arising out of conduct occurring on or after January 1, 2009.*" (Stats. 2008, ch. 383, § 1, italics added.) This bill "exempts claims for childhood sexual abuse against a local public entity, arising out of conduct occurring on or after January 1, 2009, from the Government Tort Claims Act." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 640 (2007–2008 Reg. Sess.) as amended July 14, 2008, p. 1.)

The 2008 amendment, by its terms, does not apply to the instant case. However, in view of our conclusion herein with respect to K.J.'s appeal, it would appear the 2008 amendment is declaratory of existing law to the extent that it applies the delayed discovery doctrine to the accrual of a cause of action brought by an adult plaintiff against a public entity for childhood sexual abuse. (Code Civ. Proc., § 340.1, subd. (a).)

[3] Sutliff is not a party to this appeal.

[4] A school district is not vicariously liable for a sexual assault committed by a teacher on a student (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 441 [256 Cal.Rptr. 766, 769 P.2d 948] (*John R.*)), but may be held liable pursuant to section 815.2 for its own negligent supervision (*Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360]; *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 933 [80 Cal.Rptr.2d 811, 968 P.2d 522]). Here, K.J. alleged the District was negligent in supervising Sutliff, who had a history of inappropriate contact with female students.

She attended Arcadia High School as a student. In September 2003, at the time she was a 15-year-old sophomore, Sutliff, a popular teacher in his 30's, began a campaign of seducing her. She turned 16 in December 2003. Sutliff gave K.J. her first kiss, and a sexual relationship began at or near that time. All their encounters occurred in Sutliff's classroom, during school hours, usually at lunchtime or immediately before sixth period, when they were to report to the soccer field and had several minutes between fifth and sixth periods. The District allowed Sutliff to maintain blinds for the windows and a couch in his room, which allowed for security and comfort.

The District knew Sutliff had used e-mail to communicate with female students in the past and had warned him not to continue said conduct. Parents of at least one other female student had complained to the school regarding excessive and late night e-mail communications between Sutliff and their daughter. Although Sutliff had been warned by school authorities to cease such communication, there had been no followup monitoring of his activities.

At no time during her minority did K.J. disclose her relationship with Sutliff to her parents.

During her senior year, in December 2005, K.J. turned 18 years of age.

In July 2006, after graduation, K.J. disclosed her relationship with Sutliff to her mother. The disclosure was made because Sutliff's wife had learned of the affair. Sutliff told K.J. he could no longer carry on the relationship. Feeling devastated by the end of the relationship, K.J. sought comfort from her mother. K.J.'s mother wanted to disclose the relationship to the police but feared that K.J. would commit suicide if she did so. K.J. agreed to undergo counseling in exchange for her mother's promise not to report Sutliff's illegal conduct.

However, as an employee of the District and as a mandatory reporter,[5] the mother no longer could keep the secret once the school year began. The mother then reported Sutliff's illegal conduct and he was arrested in October 2006.

Even after Sutliff's arrest, K.J. *"believed that she was in love with [him] and that he had done nothing wrong.* Through a friend, [K.J.] sent a message to Sutliff promising that she was not the one who had turned him in and that everything was going to be okay because her parents would not testify against him." (Italics added.)

---

[5] Penal Code section 11165.7 defines persons who are mandated reporters of suspected child abuse.

Sutliff pled guilty and was sentenced to 12 years in prison.

K.J. continued in therapy and, in July 2007, she realized that she had been victimized by Sutliff.

Two months after that realization, in September 2007, K.J. presented a government tort claim to the District, which claim was denied as untimely. K.J. specifically pled that pursuant to the delayed discovery rule, the tort claim was timely because the cause of action did not accrue until July 2007, when K.J. knew or had reason to know she had been injured.

In sum, K.J. pled a cause of action against the District for its negligent supervision of Sutliff, and further, that the lawsuit was preceded by the presentation of a timely tort claim to the District.

### 2. *The District's demurrer.*

The District demurred, asserting the complaint failed to allege facts demonstrating compliance with the claims statute and therefore no cause of action was stated against the District. The District contended K.J. was responsible for presenting a timely tort claim by June 2006, six months after reaching the age of majority. Alternatively, the date of accrual occurred on the date K.J. ceased to be under the District's supervision, which would have been on or about her graduation, before July 2006. Under either accrual date, the September 17, 2007 tort claim was untimely.

The District further argued K.J. failed to allege she applied to the District for leave to present a late claim; due to K.J.'s failure to file a timely tort claim and failure to make application for leave to present a late claim, K.J. had not complied with the claims statute, so as to bar her action against the District.

In addition, the District contended the delayed discovery rule was inapplicable because K.J., not her mother, presented the tort claim; if a parent presents a claim on behalf of a minor, it is the knowledge of the parent, rather than that of the minor, which starts the time of accrual. However, the complaint reflected K.J. was an adult for about 21 months before she presented the tort claim on her own behalf.

Further, even assuming the delayed discovery rule was applicable, K.J. alleged she told her mother in July 2006 about the inappropriate relationship and that Sutliff was arrested in October 2006. Therefore, notwithstanding K.J.'s allegation she did not comprehend her psychological damage until

July 2007, both K.J. and her mother knew by October 2006 at the latest that Sutliff's conduct toward K.J. was injurious.

### 3. *Trial court's ruling.*

On July 2, 2008, the matter came on for hearing. The trial court sustained the District's demurrer without leave to amend, stating: "[K.J.] has failed to file a timely Government Tort Claim with the District. [K.J.], as an adult, presented her Government Tort Claim more than a year and a half after she turned the age of majority, more than a year after graduating from high school, and eleven months after the arrest of defendant Sutliff."

### 4. *The appeal.*

K.J. filed a timely notice of appeal from the judgment of dismissal.

## CONTENTIONS

Plaintiff contends she duly pled she filed a timely government tort claim in that she alleged she filed a claim within six months of her realization, as a result of psychotherapy as well as the passage of time and distance from Sutliff, that she had been victimized by him.

## DISCUSSION

### 1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Our review is de novo. (*Ibid.*)

## 2. *Government claims statute requirements.*

■ Before suing a public entity, a plaintiff must present a timely written claim for damages to the entity. (§ 911.2; *Shirk, supra,* 42 Cal.4th at p. 208.) Such claims must be presented to the governmental entity no later than six months after the cause of action accrues. (§ 911.2; *Shirk, supra,* at p. 208.)

■ The government claims statutes do not contain a unique definition of accrual. Rather, accrual of the cause of action for purposes of the claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants. (§ 901; *Shirk, supra,* 42 Cal.4th at pp. 208–209.)

■ Timely claim presentation is not merely a procedural requirement, but rather, a condition precedent to a plaintiff's maintaining an action against a defendant, and thus, an element of the plaintiff's cause of action. (*Shirk, supra,* 42 Cal.4th at p. 209.) A complaint which fails to allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action. (*Ibid.*)

■ Only after the public entity has acted upon, or is deemed to have rejected the claim, may the injured person bring a lawsuit alleging a cause of action in tort against the public entity. (§§ 912.4, 945.4; *Shirk, supra,* 42 Cal.4th at p. 209.)

■ Generally, the lawsuit must be commenced within *six months* of notice of rejection of the claim. (§§ 913, 945.6; Code Civ. Proc., § 342; *Shirk, supra,* 42 Cal.4th at p. 209.) Code of Civil Procedure section 340.1 sets forth a special statute of limitations for victims of childhood sexual abuse.[6] (*County of Los Angeles v. Superior Court* (2005) 127 Cal.App.4th 1263, 1268 [26 Cal.Rptr.3d 445].) However, sexual abuse victims who bring suit against a public entity are bound by the much shorter statute of limitations set forth in section 945.6. (*County of Los Angeles,* at p. 1269.)

---

[6] Code of Civil Procedure section 340.1 states in part: "(a) In an action for recovery of damages suffered as a result of childhood sexual abuse, *the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later,* for any of the following actions: [¶] (1) An action against any person for committing an act of childhood sexual abuse. [¶] (2) An action for liability against any person or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff. [¶] (3) An action for liability against any person or entity where an intentional act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff." (Italics added.)

### 3. *Determining the date of accrual.*

██ "The date of accrual of a cause of action marks the starting point for calculating the claims presentation period. (Gov. Code, § 901; *Mosesian v. County of Fresno* (1972) 28 Cal.App.3d 493, 500 [104 Cal.Rptr. 655].) 'The general rule for defining the accrual of a cause of action sets the date as the time "when, under the substantive law, the wrongful act is done," or the wrongful result occurs, and the consequent "liability arises." [Citation.] In other words, it sets the date as the time when the cause of action is complete with all of its elements [citations]—the elements being generically referred to by sets of terms such as "wrongdoing" or "wrongful conduct," "cause" or "causation," and "harm" or "injury" [citations].' (*Norgart*[, *supra,*] 21 Cal.4th [at p.] 397 . . . ; see also *Mosesian v. County of Fresno, supra*, at p. 500 ['A cause of action normally accrues when under the substantive law the wrongful act is done and the liability or obligation arises, that is, when action may be brought'].) 'A cause of action accrues for purposes of the filing requirements of the Tort Claims Act on the same date a similar action against a nonpublic entity would be deemed to accrue for purposes of applying the relevant statute of limitations.' (*John R.*[, *supra*, 48 Cal.3d at p.] 444, fn. 3 . . . ; accord, *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 708 [269 Cal.Rptr. 605].)" (*V.C., supra*, 139 Cal.App.4th at p. 508.)

██ A "civil cause of action for child molestation generally accrues at the time of the molestation." (*Doe v. Bakersfield City School Dist.* (2006) 136 Cal.App.4th 556, 567, fn. 2 [39 Cal.Rptr.3d 79]; accord, *Christopher P. v. Mojave Unified School Dist.* (1993) 19 Cal.App.4th 165, 169 [23 Cal.Rptr.2d 353].) Where the molestation is continuous, accrual is measured from the date of the last molestation. (*Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1053–1054 [75 Cal.Rptr.2d 777]; *V.C., supra*, 139 Cal.App.4th at p. 510.)

Here, the two-and-half-year period of sexual abuse ended in June 2006, upon K.J.'s graduation. K.J. did not present a claim to the District until September 2007. The question presented is whether K.J. has alleged sufficiently either (1) equitable estoppel to bar the District from asserting her noncompliance with the claims statute, or (2) a delayed discovery of the cause of action which postponed the accrual date until she learned in therapy that she had been victimized by Sutliff.

### 4. *Equitable estoppel.*

#### a. *General principles.*

██ "It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have

prevented or deterred the filing of a timely claim by some affirmative act." (*John R., supra*, 48 Cal.3d at p. 445; accord, *Christopher P., supra*, 19 Cal.App.4th at p. 170; *V.C., supra*, 139 Cal.App.4th at p. 516.) Estoppel as a bar to a public entity's assertion of the defense of noncompliance arises when a plaintiff establishes by a preponderance of the evidence (1) the public entity was apprised of the facts, (2) it intended its conduct to be acted upon, (3) the plaintiff was ignorant of the true state of facts, and (4) relied upon the conduct to his detriment. (*Christopher P., supra*, at p. 170.)

Estoppel "most commonly results from misleading statements about the need for or advisability of a claim . . . ." (*John R., supra*, 48 Cal.3d at p. 445.) Estoppel may also "be established by acts of intimidation or violence that are intended to prevent the filing of a claim. (*John R., supra*, at p. 445.) In *John R.*, for example, the court found that the doctrine of equitable estoppel could be applied when a student failed to tell his parents about a teacher's sexual abuse because the teacher threatened to retaliate if he disclosed the incidents. (*Id.* at pp. 445–446; see also *Doe v. Bakersfield City School Dist., supra*, 136 Cal.App.4th at pp. 571–573 [undisputed evidence of teacher's threats and the plaintiff's fear, even into adulthood, supported application of the equitable estoppel doctrine]; *Ortega v. Pajaro Valley Unified School Dist., supra*, 64 Cal.App.4th at p. 1050 [teacher's continuous verbal threats and intimidating conduct, including driving by student's new school and filing a defamation action against her for reporting abuse to school officials, supported application of the equitable estoppel doctrine]; *Christopher P., supra*, at p. 173 ['A directive by an authority figure to a child not to tell anyone of the molestation is a sufficient inducement of delay to invoke an estoppel'].)" (*V.C., supra*, 139 Cal.App.4th at pp. 516–517.)

> b. *K.J. failed to allege facts supporting the application of equitable estoppel against the District.*

K.J. has not alleged any acts of violence or intimidation by Sutliff that were intended to deter her from presenting a tort claim to the District. (*John R., supra*, 48 Cal.3d at p. 445.) Nor has K.J. alleged Sutliff made any misleading statements about the need for, or advisability of, a claim. (*Ibid.*) In the absence of such allegations, K.J. has failed to plead a basis to estop the District from asserting her noncompliance with the claims statutes.

Here, K.J.'s theory is she felt dependency, loyalty, affection and friendship toward Sutliff, such that she *did not even know* she had been molested and victimized. K.J.'s theory implicates the doctrine of delayed discovery, rather than equitable estoppel.

### 5. The delayed discovery doctrine.

#### a. General principles.

Generally, a cause of action accrues " 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' " (*Norgart, supra,* 21 Cal.4th at p. 397.) The "delayed discovery" doctrine modifies that rule and protects a plaintiff by postponing accrual of a cause of action *until the plaintiff discovers, or has reason to discover, the cause of action. (Ibid.)* For purposes of that doctrine, "the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least 'suspects . . . that someone has done something wrong' to him [citation], 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding' [citation]." (*Id.* at pp. 397–398, fn. omitted.)

#### b. The delayed discovery doctrine, as applied to victims of childhood sexual abuse.

Courts equitably may apply the delayed discovery doctrine to a cause of action arising out of childhood sexual abuse. (*Curtis T., supra,* 123 Cal.App.4th at p. 1418; *V.C., supra,* 139 Cal.App.4th at p. 515.) In *Curtis T.,* the minor plaintiff brought a tort action against a county alleging he had been molested while in foster care for several years, between March 1996 and February 1999. The plaintiff contended his government claim was timely filed in March 2003, within six months of his mother's discovery of the alleged molestation in September 2002. The county responded the claim was untimely because the cause of action accrued no later than February 1999, when the alleged abuse ended. (*Curtis T.,* at p. 1409.)

In reversing the sustaining of a demurrer without leave to amend, *Curtis T.* "h[e]ld that plaintiff must be given leave to amend to allege, if he is able to do so truthfully—given his youth, ignorance, and inexperience, as well as his foster parent's alleged complicity in the abuse—that he lacked a real awareness, *until his mother's discovery of the alleged molestation,* that what happened to him between the ages of five and eight was wrong. Such truthful allegations would be sufficient, in our view, to invoke the equitable delayed discovery rule of accrual, under which plaintiff's claim would be deemed timely for pleading purposes." (*Curtis T., supra,* 123 Cal.App.4th at pp. 1422–1423, italics added; accord, *V.C., supra,* 139 Cal.App.4th at p. 515.)

In both *Curtis T.* and *V.C.,* the cause of action against a public entity for sexual abuse was brought by a minor. (*Curtis T., supra,* 123 Cal.App.4th at

p. 1408; *V.C., supra,* 139 Cal.App.4th at p. 504.) However, that does not mean the doctrine of delayed discovery is limited to *minors'* molestation cases.

In this regard, *Tietge v. Western Province of the Servites, Inc.* (1997) 55 Cal.App.4th 382, 387 [64 Cal.Rptr.2d 53] (*Tietge*) is instructive. *Tietge* observed: "The goal of Code of Civil Procedure section 340.1 is to allow victims of childhood sexual abuse 'a longer time period in which to become aware of their psychological injuries and remain eligible to bring suit against their abusers.' [Citation.] The intimidation which allows an abuser to take advantage of a child does not magically or suddenly end the day the child attains majority. Indeed, it can continue into the victim's adulthood. *That is why the Legislature drafted the delayed discovery provisions of section 340.1 to provide that the limitations period begins to run only after the victim, who is then an adult, appreciates the wrongfulness of the abuser's conduct.* Accordingly, where as here the alleged childhood sexual abuse is part of a course of conduct that continues beyond childhood, the limitations period of section 340.1 must apply. Any other conclusion would run contrary to the goal of the statute and serve only to reward perpetrators who engage in long-term abuse." (*Id.* at p. 387, italics added.)

We recognize the extended statute of limitations set forth in Code of Civil Procedure section 340.1 is inapplicable here. Inasmuch as the District is a public entity, this action is governed by section 945.6, requiring suit to be filed within six months of notice of rejection of the claim. (*County of Los Angeles v. Superior Court, supra,* 127 Cal.App.4th at p. 1270.)

However, the issue here is not the statute of limitations for filing a lawsuit—rather, our concern is with the *accrual date* for purposes of calculating the claims presentation deadline. With respect to determining the accrual date, a "cause of action accrues for purposes of the filing requirements of the Tort Claims Act *on the same date a similar action against a nonpublic entity would be deemed to accrue* for purposes of applying the relevant statute of limitations." (*John R., supra,* 48 Cal.3d at p. 444, fn. 3, citing § 901, italics added; accord, *Shirk, supra,* 42 Cal.4th at pp. 208–209.)

As against a nonpublic entity, the delayed discovery doctrine postpones accrual until the plaintiff discovers, or has reason to discover, the cause of action. (*Norgart, supra,* 21 Cal.4th at p. 397.)

Code of Civil Procedure section 340.1 codifies the delayed discovery doctrine in the context of an action for recovery of damages suffered as a result of childhood sexual abuse. We recognize the extended statute of limitations set forth in Code of Civil Procedure section 340.1 is inapplicable

because the District is a public entity. Nonetheless, the language in Code of Civil Procedure section 340.1 characterizing accrual as "the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse," guides our understanding of the accrual date applicable to K.J.'s presentation of a tort claim to the District.[7]

 c. *K.J.'s allegations are sufficient to invoke the delayed discovery rule of accrual, such that the September 2007 tort claim is deemed timely for pleading purposes.*

Here, K.J. alleged "Sutliff took advantage of his position of authority as [her] teacher to cause her to have a dependent, sexual relationship with him. [He] exploited [K.J.'s] age of minority, vulnerability and confidence to seduce her into an unlawful and harmful sexual relationship," a relationship which continued for two and a half years, until K.J. graduated from high school in June 2006, at the age of 18 and a half. "Even upon Sutliff's arrest, [K.J.] believed that she was in love with [him] and that he had done nothing wrong." Further, it was not until July 2007, as a result of psychotherapy, that K.J. "realized that she had been victimized by Sutliff."

These allegations are sufficient to invoke the delayed discovery rule of accrual, such that K.J.'s tort claim, presented to the District in September 2007, is deemed timely for pleading purposes.

 ■ The District, however, asserts that upon its rejection of K.J.'s claim as untimely, K.J. should have filed an application for leave to present a *late* claim (§ 911.4), and if that application were denied, K.J. then should have petitioned the court for an order relieving her from the requirements of the claims statute (§ 946.6). We reject the District's contention that K.J. was required to take these procedural steps prior to filing suit. A complaint against a public entity must "allege facts demonstrating either that *a claim was timely presented* or that compliance with the claims statute is excused . . . ." (*Shirk, supra,* 42 Cal.4th at p. 209, italics added.) As explained, pursuant to the delayed discovery rule of accrual, K.J.'s first amended complaint adequately alleged the claim she presented to the District in September 2007 was timely.

---

[7] At oral argument, counsel for the District argued this court should not look to Code of Civil Procedure section 340.1 to determine the date of accrual; instead, this court should look to Government Code section 911.2. However, section 911.2 merely requires presentation of a claim within six months of "accrual of the cause of action"—it does not define the date of accrual for purposes of presenting a claim to a public entity. Counsel for the District then went on to acknowledge the date of accrual for purposes of filing a government claim is the same as the date of accrual in an action in which no public entity is involved. (§ 901.)

Therefore, the conclusion is ineluctable that the date of accrual in Code of Civil Procedure section 340.1, pertaining to private defendants, is applicable to the presentation of a claim to a public entity for damages arising out of childhood sexual abuse.

### d. *The impact of K.J.'s mother's awareness of the sexual abuse in July 2006 on the accrual date.*

"Where the plaintiff is a *minor*, it is not the knowledge or lack thereof of the minor, but the knowledge or lack thereof of the minor's parents which determines the time of accrual of the cause of action." (*Whitfield v. Roth* (1974) 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588], italics added; see, e.g., *Curtis T., supra*, 123 Cal.App.4th at pp. 1422–1423 [minor plaintiff granted leave to amend to allege he lacked a real awareness until his mother's discovery of the alleged molestation]; *V.C., supra*, 139 Cal.App.4th at p. 515 [evidence established minor plaintiff's mother was suspicious of wrongdoing more than six months before claim was presented to public entity].)

In the instant case, the plaintiff is *not* a minor. Further, K.J. did not tell her mother about her relationship with Sutliff until July 2006, some months after K.J.'s 18th birthday. Therefore, K.J.'s mother's awareness of the molestation has no bearing on the accrual date.

### e. *The impact of Sutliff's arrest in October 2006 on the accrual date.*

In reliance on *V.C., supra*, 139 Cal.App.4th at page 517, the trial court ruled the cause of action accrued no later than October 2006, upon Sutliff's arrest.

*V.C.*, which affirmed the sustaining of a demurrer without leave to amend, stated, without citation to authority: "Here, the effects of Castro's [the offending teacher] threats ceased when V.C. reported the abuse on August 14, 2003, and certainly no later than the following day when Castro was arrested." (*V.C., supra*, 139 Cal.App.4th at p. 517.)

To the extent *V.C.* held, as a matter of law, the psychological impact of a molester's coercive behavior ceases at the moment the perpetrator is arrested, we respectfully disagree with that decision.

Here, the trier of fact, after hearing the testimony of percipient witnesses as well as expert testimony, would be in a position to assess the impact of Sutliff's arrest upon K.J.'s awareness that he had victimized her. It cannot be said as a matter of law that at the moment of Sutliff's arrest, K.J. should have realized the wrongfulness of his conduct.

## CONCLUSION

K.J.'s allegations are sufficient to invoke the delayed discovery rule of accrual. K.J.'s tort claim, which she presented to the District in September 2007, two months after she allegedly realized she had been victimized by Sutliff, is deemed timely for pleading purposes.

## DISPOSITION

The judgment of dismissal is reversed and the matter is remanded to the trial court with directions to reinstate the first amended complaint against the District. K.J. shall recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

On May 5, 2009, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied July 15, 2009, S172172. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.