Filed 7/24/15  Richard L. v. Parham CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD L., | |
| Plaintiff and Appellant, | G048988 |
| v. | (Super. Ct. No. 30-2012-00599568) |
| TAMMERA S. PARHAM, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Reversed.

Richard L., in pro. per. for Plaintiff and Appellant

Lynberg & Watkins, Courtney L. Hylton and Caitlin I. Sanders for Defendant and Respondent.

\*          \*          \*

Plaintiff Richard L. appeals from a judgment of dismissal following a sustained demurrer without leave to amend. Now an adult, he alleges that while in the sixth grade in a public school district he was the victim of childhood sexual molestation at the hands of a chess teacher who was not an employee of the school district. Plaintiff alleges that defendant Tammera Parham, the former principal of the school, caused his injury by negligently permitting the chess teacher to come on the public school campus to recruit children to his private chess club. The court sustained the demurrer on the ground that plaintiff had not presented a claim to the school district pursuant to the Government Claims Act (Gov. Code, § 810 et. seq.).[1]

We reverse. Section 950.4 provides an exception to the claim presentation requirement where the plaintiff did not know, and had no reason to know, "that the injury was caused by an act or omission of . . . an employee of the public entity in the scope of his employment as a public employee." Nothing in the complaint indicates that during the claims presentation period, plaintiff was aware, or had reason to be aware, that defendant's alleged negligence was a legal cause of his damages. Plaintiff alleges the opposite to be true. During the claims presentation period, neither he nor his mother knew or had reason to know that defendant's negligence was a legal cause of plaintiff's injury. Assuming these facts to be true, under section 950.4, plaintiff was not required to present a claim.

FACTS

Plaintiff alleged the following facts in his operative complaint.

During the fall of 1997, plaintiff was a sixth grade student at Mariner's Elementary School, a public school in the Newport Mesa Unified School District. In late

---

[1] All statutory references are to the Government Code unless otherwise stated.

2

1997, Robert M. Snyder, a known child molester that operated a youth chess club called "Chess for Juniors," requested from defendant, the principal of the school, permission to perform chess presentations in classrooms for the purpose of recruiting children into his club. Snyder had made many similar requests to perform chess presentations at other schools in the greater Los Angeles metropolitan area, and these requests had been regularly denied. Defendant approved Snyder's request without any investigation of his background and in violation of Education Code section 51520.[2]

Plaintiff was introduced to Snyder when he made a presentation in plaintiff's sixth grade class at Mariner's Elementary School during the fall of 1997. Plaintiff expressed an interest in chess, and thus his teacher called plaintiff's mother and encouraged her to enroll plaintiff in the chess club.[3] On that recommendation, plaintiff's mother enrolled him in the chess club.

When Snyder discovered plaintiff was from a single-parent family without a father, Snyder befriended plaintiff's mother and showered plaintiff with attention. In November 1997, plaintiff's mother consented to plaintiff attending a chess tournament in Scottsdale, Arizona.

It was there that the molestation began. Snyder awoke plaintiff at night when he put his hand down plaintiff's underpants and began to masturbate plaintiff.

---

[2] Education Code section 51520, subdivision (a), states, "During school hours, and within one hour before the time of opening and within one hour after the time of closing of school, pupils of the public school shall not be solicited on school premises by teachers or others to subscribe or contribute to the funds of, to become members of, or to work for, any organization not directly under the control of the school authorities, unless the organization is a nonpartisan, charitable organization organized for charitable purposes by an act of Congress or under the laws of the state, the purpose of the solicitation is nonpartisan and charitable, and the solicitation has been approved by the county board of education or by the governing board of the school district in which the school is located."

[3] Throughout plaintiff's complaint he refers to his guardian. At oral argument on the demurrer plaintiff made clear that his "guardian" was in fact his mother.

Frightened and unsure how to respond, plaintiff did not resist. Snyder went on to engage in acts of oral copulation and forced plaintiff to masturbate him.

For approximately one year afterwards, Snyder molested plaintiff on a regular basis. The abuse happened at chess tournaments and during "chess lessons" at Snyder's residence for which plaintiff was checked out of school.

"[A]pproximately May 25th, 1998, [Snyder] sexually assaulted Plaintiff in a particularly egregious manner. Plaintiff was aware of the wrongfulness of what had been done to him, yet Plaintiff had won several local chess tournaments and had nearly won a national championship, and took pride in his prowess at the game. Plaintiff feared no longer being able to continue playing chess competitively and the shame, embarrassment, and humiliation that would accompany coming forward with allegations of sexual abuse." Plaintiff alleged in his second amended complaint that because of his "preventative steps and resistance, [he] was not sexually assaulted by [Snyder] following" the May 25, 1998 incident. However, in his opposition to the demurrer plaintiff informed the court that he continued being molested until December 6, 1998.

Sometime after January 9, 1999, plaintiff worked up the courage to confide what had happened to his mother. His mother reported the incident to the police, but because of a lack of willing witnesses and insufficient evidence, Snyder was not prosecuted. However, rumors were circulating about Snyder's tendencies, and he fled to Colorado. There, he continued to sexually assault children. But there, unlike here, he was criminally prosecuted and is currently serving a sentence of 12 years to life in prison.

In his complaint, plaintiff acknowledged he had not presented a claim to the school district under the Government Claims Act, but sought to be excused from presenting a claim pursuant to section 950.4, which states, "A cause of action against a public employee or former public employee is not barred by [the failure to file a claim] if the plaintiff pleads and proves that he did not know or have reason to know, within the period for the presentation of a claim to the employing public entity . . . that the injury

4

was caused by . . . an act or omission of an employee of the public entity in the scope of his employment as a public employee." In support of his excuse, plaintiff alleged, "neither Plaintiff nor any guardian or legal representative . . . knew or had reason to know that Plaintiff's injuries were caused by an act or omission of the Newport Mesa Unified School District or by an act or omission of an employee of the Newport Mesa Unified School District in the scope of his or her employment as a public employee during the 6 months following the last act of molestation,"

Defendant demurred on the ground, inter alia, that plaintiff failed to present a timely claim with the school district. The court sustained the demurrer, stating the "facts pled show plaintiff and his mother knew of [the] molest[ation] and that it occurred at school, which shows they had reason to know of [the] claim." Plaintiff timely appealed from the subsequent judgment of dismissal.

DISCUSSION

The issue on appeal is whether, under the facts pleaded in the operative complaint, plaintiff has stated facts which, if true, bring him within the section 950.4 exception to the Government Claims Act claim presentation requirements.

*Legal Backdrop*

Under the Government Claims Act (§ 810 et seq.), "[b]efore suing a public entity, the plaintiff must present a timely written claim for damages to the entity." (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208 (*Shirk*).) "A claim relating to a cause of action for . . . injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action." (§ 911.2, subd. (a).) "Timely claim presentation is not merely a procedural requirement, but is . . . ""'a condition precedent to plaintiff's maintaining an action against defendant'"" [citations], and thus an element of

5

the plaintiff's cause of action." (*Shirk, supra,* at p. 209.) With certain exceptions, once a claim has been presented and rejected, a plaintiff has six months to file a lawsuit. (§ 945.6, subd. (a)(1).) These time periods are *not* generally tolled while the plaintiff is a minor. (Code Civ. Proc., § 352, subd. (b).)

In 2008, the Legislature added section 905, subdivision (m) (stats. 2008, ch. 383, § 1), which provides an exception to the claim presentation requirement for "[c]laims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual abuse. This subdivision shall apply only to claims arising out of conduct occurring on or after January 1, 2009."[4] Because the events giving rise to this lawsuit occurred in 1997 and 1998, subdivision (m) does not apply here.

Prior to the amendment of section 905, the prevailing law was that the claim presentation procedure applied to childhood sexual molestation claims without exception and that the tolling provision of Code of Civil Procedure, section 340.1 did not apply. (*K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1238 ["Code of Civil Procedure 340.1 sets forth a special statute of limitations for victims of childhood sexual abuse. [Citation.] However, sexual abuse victims who bring suit against a public entity are bound by the much shorter statute of limitations set forth in section 945.6," fn. omitted]; *County of Los Angeles v. Superior Court* (2005) 127 Cal.App.4th 1263, 1268-1269 ["In 1998, the Legislature amended section 340.1 to permit victims of childhood sexual abuse to sue persons or entities other than the actual abuser. [Citation.] . . . [Citations.] To the extent that section 340.1 now authorizes suits against a person or entity other than the actual perpetrator, nothing in that statute or the legislative history of the 1998 amendment to that statute reflects an intent on the part of the

---

[4] Code of Civil Procedure, section 340.1 provides generally that the statute of limitations for claims of childhood sexual abuse expires *at the earliest* eight years after plaintiff attains the age of majority, i.e., age 26.

Legislature to excuse victims of childhood sexual abuse from complying with the Act when the defendant is a public entity or public employee"].)

This conclusion was confirmed by our high court in *Shirk*, *supra*, 42 Cal.4th 201. There, the plaintiff alleged she was sexually molested by her school teacher from 1977 to 1979. (*Id.* at p. 205.) She never filed a claim. (*Ibid.*) In 2002, she met with the teacher and surreptitiously recorded a conversation where the teacher admitted the abuse. (*Ibid.*) After meeting with a mental health practitioner in 2003, she presented a claim to the school district pursuant to the Government Claims Act. (*Ibid.*) She filed suit against the teacher and the school district shortly thereafter. (*Id.* at p. 206.) The plaintiff contended her claim was timely because a 2002 amendment to Code of Civil Procedure section 340.1 contained a provision that revived for one year childhood sexual molestation causes of action "brought against a person or an entity that had 'reason to know' or was 'on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct.' [Citations.] . . . [T]his change revived for the year 2003 those causes of action brought by plaintiffs over the age of 26 years against *nonabuser* persons or entities that would otherwise have been time-barred as of January 1, 2003, '*solely because the applicable statute of limitations has or had expired*' as of that date." (*Shirk*, at p. 208.)

The issue before the Supreme Court was: "Does that provision also apply when a plaintiff suing a public entity has failed to first present a timely claim to the entity, as required by the government claims statute (Gov. Code, § 911.2)? Our answer is 'no.'" (*Shirk*, *supra*, 42 Cal.4th at p. 205.) As the court explained, the amendment made "no reference whatsoever to any revival of the period in which to present a claim under the government claims statute" (*id.* at p. 212), as opposed to the statute of limitations (*id.* at p. 213 ["the government claim presentation deadline is not a statute of limitations"]). In reaching this conclusion, of course, the court implicitly held that the claims

presentation requirements apply to childhood sexual molestation claims without exception and without tolling.

Nonetheless, plaintiff's claim may still survive if section 950.4 applies, which states, "A cause of action against a public employee or former public employee is not barred by [the failure to present a claim] if the plaintiff pleads and proves that he did not know or have reason to know, within the period for the presentation of a claim to the employing public entity . . . that the injury was caused by . . . an act or omission of an employee of the public entity in the scope of his employment as a public employee." "[A] tort claim can only be pursued against a public employee where a companion respondeat superior action is not barred against the employing public entity by reason of noncompliance with the claim filing procedures, *except*, per section 950.4, the action *can proceed* if the claimant can plead and prove that within [the claims presentation period] he did not know or have reason to know that a public employee was the cause of his injury and damages." (*Williams v. Braslow* (1986) 179 Cal.App.3d 762, 772-773, first italics added.)

Section 950.4 "is a remedial statute intended to provide relief from technical rules which could provide '"a trap for the unwary and ignorant claimant."'" (*Leake v. Wu* (1976) 64 Cal.App.3d 668, 673 (*Leake*).) "The rule that remedial statutes are to be liberally construed [citations] applies with particular force when, as here, strict application of a statutory requirement will result in barring the claim of an incapacitated plaintiff and ultimately deny her a day in court. [¶] The Legislature and the courts are concerned with protecting the rights of incapacitated persons, as with those of minors who cannot act for themselves." (*Draper v. City of Los Angeles* (1990) 52 Cal.3d 502, 507 [interpreting § 946.6, which governs petitions to present a late claim under the Government Claims Act].)

8

*Plaintiff Alleged Facts Which, If True, Would Constitute an Exception to the Claims Presentation Requirements of the Government Claims Act*

We conclude plaintiff adequately pleaded facts from which a jury could conclude plaintiff did not know, and had no reason to know, during the claim presentation period, that defendant's alleged negligence was a legal cause of his injury.

We begin our analysis by considering the accrual date of plaintiff's cause of action. "The date of accrual of a cause of action marks the starting point for calculating the claims presentation period." (*V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499, 508.) "A cause of action accrues for purposes of the filing requirements of the Tort Claims Act on the same date a similar action against a nonpublic entity would be deemed to accrue for purposes of applying the relevant statute of limitations." (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 444, fn. 3.)

"A civil cause of action for child molestation generally accrues at the time of the molestation." (*Doe v. Bakersfield City School Dist.* (2006) 136 Cal.App.4th 556, 567 fn. 2.) However, courts sometimes apply the continuing violation doctrine to delay the date of accrual. Under the continuing violation doctrine, "[w]here the molestation is continuous, accrual is measured from the date of the last molestation." (*K.J. v. Arcadia Unified School Dist.*, *supra*, 172 Cal.App.4th at p. 1239.) In the usual case, application of the continuing violation doctrine is a benefit to the victim, as it delays the cutoff period for filing a claim with the public entity.

Here, however, under the alleged facts of this case, measuring the accrual from the date of the first molestation will likely bring the victim within the section 950.4 exception to the claim filing requirement. But measuring the accrual from the date of the last molestation will make it less likely that the exception will apply. For section 950.4 to apply, plaintiff had *not* to have known, nor had reason to know, of defendant's alleged negligence during the six-month claim presentation period. Snyder's molestation of plaintiff lasted a little over one year, beginning in November 1997, and ending either in

9

May 1998 (according to the complaint) or in December 1998 (as plaintiff acknowledged in his opposition to demurrer). In January 1999, plaintiff told his mother what had happened, and the matter was reported to the police. Plaintiff does not allege exactly when he first learned or had reason to know of defendant's negligence as a legal cause of his injury, but he affirmatively alleges it was *not* within six months following the last act of molestation. Under the facts alleged, the earliest we could infer he gained this knowledge was during the police investigation of the incidents following the January 1999 report. And that inference also assumes the police reported to plaintiff or plaintiff's mother that Snyder was a known pedophile and that a background check would have revealed that fact to whoever sought the information. Having that knowledge in hand would have given plaintiff "reason to know" (§ 950.4) that defendant likely failed to perform a background check prior to admitting Snyder on campus. If the cause of action accrued in December 1998, the police investigation was still within the claims presentation period, and, assuming plaintiff learned of Snyder's past during that investigation, section 950.4 would likely not apply. On the other hand, if the claim accrued in November 1997, the first incident of molestation, neither plaintiff nor his mother would have had reason to know of Snyder's past as a child molester during the following six months, and the section 950.4 exception would likely apply. So unlike the usual situation, where a plaintiff wants to delay the claim-filing deadline, here plaintiff wants it to be as early as possible. So the issue boils down to this: Can the continuing violation doctrine be used *against* plaintiff to defeat his claim?

We conclude it may not. We begin with the fundamental premise that a cause of action generally accrues when all of the elements of a cause of action have occurred: "Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements" — those elements being wrongdoing, harm, and causation.'" [Citation.] This is the "last element" accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.'"

10

(*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*).) Under this rule, undoubtedly plaintiff could have sued defendant immediately after the first molestation.

"The continuing violation doctrine serves a number of equitable purposes. Some injuries are the product of a series of small harms, any one of which may not be actionable on its own. [Citation.] Those injured in such a fashion should not be handicapped by the inability to identify with certainty when harm has occurred or has risen to a level sufficient to warrant action. [Citations.] Moreover, from a court-efficiency perspective, it is unwise to impose a limitations regime that would require parties to run to court in response to every slight, without first attempting to resolve matters through extrajudicial means, out of fear that delay would result in a time-barred action. [Citations.] Allegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period." (*Aryeh, supra*, 55 Cal.4th at pp. 1197-1198.)

What is important for our purposes is that the continuing violation doctrine is an *equitable* doctrine. (See *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 813-814 [describing the derivation of the continuing violation doctrine from the doctrine of equitable tolling].) As we noted above, the exception in section 950.4 is a remedial statute to be interpreted liberally. Combining these principles, we conclude that in a childhood molestation case, the equitable continuing violation doctrine may not be used as a sword against the plaintiff. Accordingly, plaintiff's cause of action accrued upon the first incident of molestation.

Next, we examine whether the court was correct in concluding, as a matter of law under the alleged facts, that plaintiff knew or had reason to know within the first six months of the molestation that his injury was caused by an act or omission of defendant. At the outset, we clarify that the relevant time frame is the six-month claims

11

presentation period — it does *not* include the time period during which plaintiff could have petitioned to file a late claim. (*Moore v. Morhar* (1977) 65 Cal.App.3d 896, 901-902 (*Moore*) ["a claimant who becomes chargeable with, or acquires, knowledge under section 950.4 during the period in which a *late claim* could be filed, may not be barred from proceeding against a public employee," fn. omitted].)

Quite obviously plaintiff knew that *someone* at the school — be it the defendant or the teacher — permitted Snyder to come on campus. Was this enough to know, under section 950.4, that defendant's act or omission "caused" plaintiff's injury? We conclude it was not. Again, this is a remedial statute. To know that a public employee had some tangential involvement somewhere along the way is not enough to know that the public employee was the legal cause of the injury. It is only when plaintiff knows or has reason to know that a public employee's wrongful conduct caused the injury that the plaintiff is on notice to file a claim. Here, nothing in the complaint suggests that plaintiff knew the alleged fact that defendant permitted Snyder on campus wrongfully, without performing a background check, and in contravention of her legal duty to first obtain the school board's permission.

Nor can we say as a matter of law, based on the pleadings, that plaintiff had reason to know of defendant's wrongful conduct. Plaintiff was being abused at the time. He was in the middle of a year-long nightmare. We will not impose upon an abuse victim the legal obligation to immediately launch a full-scale investigation to determine whether defendant, or any other school employee negligently failed to discover Snyder's background before allowing him on campus. And plaintiff was not aware of any fact that would have made defendant's alleged wrongful conduct obvious. Accordingly, we conclude plaintiff has alleged facts which, if true, would excuse him under section 950.4 from filing a claim under the Government Claims Act.

12

Defendant urges us to adopt a more rigorous investigation requirement based on the holdings of *Moore*, *supra*, 65 Cal.App.3d 896 and *Leake*, *supra*, 64 Cal.App.3d 668. We decline to do so.

In *Moore*, plaintiff visited Los Angeles where she injured her foot on cracked curbing. (*Moore*, *supra*, 65 Cal.App.3d at p. 899.) Based on the advice of her counsel, she filed an application for leave to file a late claim with the City of Los Angeles (the City). (*Ibid.*) The City granted the application to file late, but denied the claim on the merits. (*Ibid.*) The City explained that the curb in question was under the jurisdiction of the County of Los Angeles (the County). (*Ibid.*) Plaintiff did not inform her counsel of that fact. (*Ibid.*) Plaintiff filed suit against the City and the County. (*Ibid.*) Subsequently, seven months after filing a claim with the City, plaintiff filed an application to file a late claim with the County, which was denied. (*Id.* at p. 900.) She also petitioned the court to file a late claim, which was likewise denied. (*Ibid.*) The court sustained a demurrer. (*Ibid.*)

On appeal, the plaintiff claimed she was excused from the claim presentation requirement pursuant to section 950.4. She claimed "that her mistaken belief that the City was involved, or, concomitantly, her ignorance of the fact that the defective curbing lay just outside the City in an unincorporated area within County jurisdiction, was reasonable." (*Moore, supra,* 65 Cal.App.3d at p. 902.) The court rejected the argument: "a claimant under section 950.4 should exercise reasonable diligence in ascertaining the facts giving rise to his or her cause of action. [Citation.] Surely, since appellant was aware of the claim-filing procedure and time restraints, a perusal of a city map would have been reasonable and would also have revealed that the situs of her injury was within County territory. By the same token, she must have known that an employee was in charge of the condition of curbs." (*Ibid.*)

This case is easily distinguished. What constitutes reasonable diligence for an adult who stubbed their foot on a curb is not what can be reasonably expected of a

childhood sexual abuse victim. The Legislature recognized this simple fact when it extended the statute of limitations for childhood sexual abuse victims to their 26 birthday. (See Code Civ. Proc., §340.1.)

In *Leake*, the children of the decedent, through their guardian ad litem, brought suit against an anesthesiologist present at a surgery where their mother died. (*Leake, supra,* 64 Cal.App.3d at pp. 669-670.) The trial court granted summary judgment on the ground that the anesthesiologist was a county employee and plaintiffs had not complied with the Government Claims Act. (*Leake*, at p. 670.) "The dispositive issue," according to the court of appeal, was "whether plaintiffs' affidavits in opposition to the motion for summary judgment created a triable issue of fact [citation] as to plaintiffs' claim to fall within the exception provided by Government Code section 950.4." (*Id.* at p. 671.) Both the guardian ad litem, who was 70 years old with only an eighth-grade education, and the plaintiffs' attorney, declared that they did not know the anesthesiologist was a county employee until after the litigation commenced. (*Id.* at p. 672.) Both understood that as a licensed physician, the anesthesiologist was an independent professional, not an employee of the county-owned hospital. (*Ibid.*)

The *Leake* court affirmed based on the "'inexcusable neglect'" of the attorney. (*Leake*, *supra*, 64 Cal.App.3d at p. 673.) "Despite the fact that the county hospital was named as a defendant, no claim was ever filed with the county, and it appears that the county was never even served with summons and the complaint. The attorney apparently conducted no investigation, such as simple inquiry to the hospital, to determine whether the doctors might have been county employees. Instead, the attorney chose to rely solely on his understanding or personal experience that a doctor is an independent contractor. The attorney's failure to make even a minimal inquiry into the matter was not the conduct of a reasonably prudent person nor the type of mistake or neglect for which the statutes afford relief." (*Ibid.*)

14

*Leake* is easily distinguished on essentially the same basis as *Moore*. What constitutes reasonable diligence on behalf of an attorney cannot be expected of a childhood sexual abuse victim. Notably, the *Leake* court did *not* fault the guardian ad litem; solely the attorney.

## DISPOSITION

The judgment is reversed and the matter is remanded with directions to overrule the demurrer to plaintiff's second amended complaint. Plaintiff shall be awarded costs on appeal.

IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.